# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERRENCE L. DAVIS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>J. GRASE, et al.,<br><br>　　　　　Defendants. | Case No. 1:18-cv-01668-DAD-SAB (PC)<br><br>**FINDINGS AND RECOMMENDATION RECOMMENDING DISMISSAL ACTION, WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO PROSECUTE, AND FAILURE TO OBEY A COURT ORDER**<br><br>(ECF Nos. 10, 13)<br><br>**FOURTEEN (14) DAY DEADLINE** |

Plaintiff Terrence L. Davis is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

## I.

## INTRODUCTION

On June 26, 2019, the Court screened Plaintiff's complaint and found that Plaintiff had failed to state a cognizable claim for relief. (ECF No. 10.) The Court's screening order provided Plaintiff with the legal standards that applied to his claims and granted Plaintiff leave to file a first amended complaint within thirty days after service of the order. (Id.) Further, Plaintiff was expressly warned that, if he failed to file an amended complaint in compliance with the Court's order, the Court would recommend to the District Judge that this action be dismissed, with prejudice, for failure to state a claim, failure to obey a court order, and failure to prosecute. (Id. at

1

16.)

On August 7, 2019, Plaintiff filed a motion for an extension of time to file a first amended complaint. (ECF No. 11.) On August 9, 2019, the Court granted Plaintiff's motion and gave Plaintiff an additional 30 days in which to timely file a first amended complaint. (ECF No. 12).

On October 4, 2019, following Plaintiff's failure to file a first amended complaint or otherwise communicate with the Court, the Court ordered Plaintiff to either file a first amended complaint or show cause in writing why this action should not be dismissed for failure to state a claim, failure to comply with the Court's June 26, 2019 order, and failure to prosecute, within fourteen (14) days from the date of service of the order. (ECF No. 13.) Plaintiff was again expressly warned that failure to comply with the Court's order would result in a recommendation to the District Judge that the action be dismissed, with prejudice, for failure to state a claim, failure to obey a court order, and failure to prosecute. (Id. at 2.)

The deadline for Plaintiff to file either a first amended complaint or a written response showing cause why the action should not be dismissed expired on October 24, 2019, and Plaintiff has not filed either a first amended complaint or a written response or otherwise communicated with the Court. Accordingly, the Court recommends dismissal of this action for the reasons discussed below.

**II.**

**DISCUSSION**

**A.   Failure to State a Claim**

1.   Screening Requirement and Standard

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the

2

pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

2. Summary of Allegations

Plaintiff names Dr. Jerome Grase, Dr. Barney Rosen, Dr. W. Walsh, Dr. Jennifer Seymour, Jessica Russell, Melyssa MacQuarrie, Julia Mantonya, CCI Tascano, Janai Rodriguez, Johanna McCain, CCI Rubalcava, Kelly Nesson, H. Leiva, unnamed members of the IDTT on April 23, 2018, May 2, 2018, and August 1, 2018, unnamed CCI Tehachapi Medical Appeals Office Supervisors and Personnel, unnamed CCI Tehachapi Administrative personnel, unnamed CCI medical personnel, Dr. Jane/John Does, and Jane – John Does, Psychologists, Psychiatrists, Case Workers, ACSWs, Supervisors, and LCSWs as Defendants.

Plaintiff arrived at California Correctional Institution ("CCI") on April 14, 2018. Upon arrival, Plaintiff informed unnamed correctional officers that he was having ongoing and severe mental health problems, including paranoia, homicidal episodes, anxiety attacks, racing thoughts, severe depressional bouts, and manic episodes. The correctional officers contacted unnamed mental health personnel, who interviewed and evaluated Plaintiff. After Plaintiff was assessed,

the mental health personnel concluded that Plaintiff had to be sent to CCI's crisis beds and then transferred to Kern Valley State Prison's ("KVSP") mental health crisis beds. On April 15, 2018, Plaintiff was transported from CCI's crisis beds to KVSP's crisis beds, for acute care and/or treatment, and was received and processed by unnamed KVSP mental health personnel. Plaintiff informed the KVSP mental health personnel about his immediate and acute psychiatric problems.

While Plaintiff missed his first Interdisciplinary Treatment Team ("IDTT") hearing due to his mental health problems, he attended the second IDTT hearing on April 23, 2018. At the hearing, Plaintiff described his immediate, severe, precipitating, and decompensating mental health problems. Further, Plaintiff told the IDTT hearing about his history. Plaintiff explained that, while he was housed at California Men's Colony, on August 31, 2017, he was given a Rules Violation Report for threatening to kill his then-psychiatrist. In September 2017, Plaintiff was sent to the state hospital, PIP-Stockton, for a 180-day program due to his ongoing psychological problems. However, Plaintiff was released from the state hospital after 20 to 26 days because he had developed plans to kill his PIP-Stockton treatment team.

After he related his history to the KVSP crisis bed IDTT members, Plaintiff asserted that he needed to be transferred to an acute-care treatment program, like California Medical Facility in Vacaville. However, the KVSP IDTT members refused to send Plaintiff to California Medical Facility, stated that they would make a referral to send Plaintiff to an Intermediate Care Facility ("ICF"), and then discharged Plaintiff back to CCI.

When Plaintiff arrived back at CCI on an unknown date, he was still as unstable mentally as when he left. Additionally, the KVSP IDTT members failed to refer Plaintiff to an ICF. Instead, the KVSP IDTT members made a suggestion that Plaintiff be transferred to an ICF.

On an unknown date, Plaintiff was again sent to KVSP's crisis beds for the same mental decompensation, but only stated for an unstated number of days before being returned to CCI. When Plaintiff went to an IDTT committee meeting at an unnamed facility, the IDTT members stated that Plaintiff could be placed in an ICF program, but also placed in an unnamed program.

Plaintiff alleges that Defendants are officials at CCI and KVSP, who are operating within their assigned job duties and scope, who, with a culpable state of mind, arbitrarily failed and/or

4

refused to provide Plaintiff with adequate, effective mental health and/or medical care for Plaintiff's ongoing and precipitating serious mental, physical, and emotional injuries and deprivations. (ECF No. 1, at 7.) Defendants named are employed by the California Department of Corrections and Rehabilitation as mental health, warden, and medical officials responsible for the oversight of the operations and enforcement of mental health policies, protocols, practices, standards, and procedures required by state and federal laws, which create obligations to provide mental health care services, meaningful follow-ups, treatments, and A.D.A. accommodations, which are not being provided to Plaintiff. Plaintiff asserts that his ongoing mental, physical, and emotional deprivations continue to be disregarded and not adequately treated due to Defendants' direct bias and ulterior motives. Finally, Plaintiff alleges that all of the Defendants are acting jointly together to delay, deny, and deprive Plaintiff of adequate and meaningful mental health care, treatment, and A.D.A. accommodations in order to try and make Plaintiff hurt other people or himself.

Additionally, Plaintiff asserts that he has no administrative remedies because CCI personnel have arbitrarily and wrongfully blocked his 602 HC health care appeals against the KVSP IDTT Crisis Bed committee members and against the CCI IDTT officials. Plaintiff asserts that, then, CCI officials wrote their own 602 HC health care appeal, without Plaintiff's knowledge and consent, in order to negate the ongoing staff misconduct and deliberate indifference.

In relief, Plaintiff seeks a declaratory judgment, appointment of a special master to investigate Plaintiff's claims and provide all of Plaintiff's records to the Court, a preliminary and/or permanent injunction, an order transferring Plaintiff to an ICF 1-year program, appointment of counsel, attorney's fees, and issue an order for provision of appropriate mental health treatment.

3. <u>Analysis</u>

**a. Federal Rule of Civil Procedure 8**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which apply to § 1983 actions. <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506,

512 (2002). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512 (citation and internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). This is because, while factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556-57; Moss, 572 F.3d at 969. Therefore, Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citations and internal quotation marks omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are merely consistent with a defendant's liability" fall short of satisfying the plausibility standard. Id. (citation and internal quotation marks omitted).

While "plaintiffs [now] face a higher burden of pleading facts," Al-Kidd v. Ashcroft, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of *pro se* prisoners are still construed liberally and are afforded the benefit of any doubt. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). However, since "the liberal pleading standard … applies only to a plaintiff's factual allegations," Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989), "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled[,]" Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982), and courts are not required to indulge unwarranted inferences, Doe v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009).

Here, many of Plaintiff's allegations are conclusory allegations that are unsupported by facts. Further, while Plaintiff has specifically named thirteen individual Defendants and several different groups of Doe Defendants, Plaintiff's complaint fails to include any factual allegations identifying each individual Defendant's asserted involvement in any constitutional violation. Instead, Plaintiff's allegations are simply ascribed to Defendants generally and collectively or to a

6

group of Defendants, such as the KVSP crisis bed IDTT members, without any alleging which individual Defendants are a member of that group of Defendants. Therefore, Plaintiff's complaint fails to comply with Rule 8(a)'s simplified pleading standard. Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) ("Plaintiff must allege the basis of his claim against *each* defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)[.]" (italics added)); see also Van Dyke Ford, Inc. v. Ford Motor Co., 399 F. Supp. 277, 284 (D. Wis. 1975) ("Specific identification of the parties to the activities alleged by the plaintiffs is required … to enable the defendant to plead intelligently.").

### b. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Here, Plaintiff fails to adequately link any specific Defendant named in this action to any deprivation of his constitutional rights. Plaintiff has identified thirteen individual Defendants, as well as numerous Doe Defendants, but Plaintiff has not alleged what each Defendant and Doe Defendant did, or did not, do to violate his constitutional rights. Instead, Plaintiff's allegations are simply ascribed to Defendants generally and collectively or to a group of Defendants, such as the KVSP crisis bed IDTT members, without any alleging which individual Defendants are a

member of that group of Defendants. Therefore, Plaintiff has failed to allege a cognizable claim against any Defendant.

      **c.**    **Supervisory Liability**

To the extent Plaintiff seeks to hold any Defendant liable based solely upon their supervisory role, he may not do so. Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. Iqbal, 556 U.S. at 676–77; Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1020–21 (9th Cir.2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); accord Starr v. Baca, 652 F.3d 1202, 1205–06 (9th Cir. 2011); Corales v. Bennett, 567 F.3d 554, 570 (9th Cir. 2009). Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Redman v. Cnty. of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations and quotations marks omitted), abrogated on other grounds by Farmer v. Brennan, 511 U.S. 825 (1970).

Here, Plaintiff appears to allege that some of the Defendants are liable as supervisory personnel. However, as Plaintiff has failed to attribute any of the alleged unconstitutional conduct to any individual Defendant, the Court cannot determine if Plaintiff is attempting to hold any supervisory Defendants liable for the conduct of their subordinates based on a respondeat superior theory of liability, which, as noted above, is not cognizable under § 1983.

      **d.**    **Deliberate Indifference to Serious Medical Needs**

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The Ninth Circuit has held that "the

///

requirements for mental health care are the same as those for physical health care needs." Doty v. Cnty. of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).

The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' The 'routine discomfort' that results from incarceration and which is 'part of the penalty that criminal offenders pay for their offenses against society' does not constitute a 'serious' medical need." Doty, 37 F.3d at 546 (citations omitted).

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Deliberate indifference may be shown by the denial, delay, or intentional interference with medical treatment or by the way in which medical care is provided. Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988). "Deliberate indifference is a high legal standard," Simmons v. Navajo Cnty. Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06).) "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d

9

1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

"A difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012). "To show deliberate indifference, the plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health." Id.

In his complaint, Plaintiff alleges that, when he arrived at CCI on April 14, 2018, he informed correctional officers that he was having ongoing and severe paranoia, homicidal episodes, anxiety attacks, racing thoughts, severe depressional bouts, and manic episodes. Further, Plaintiff alleges that, when he was housed at California Men's Colony in August 2017, he was given a Rules Violation Report for threatening to kill his psychiatrist and that, when he was housed at a state hospital, PIP-Stockton, he was released from a 180-day program after 20 to 26 days because he had developed plans to kill his treatment team. Finally, Plaintiff alleges that he continues to suffer from the same mental health problems. Based upon these facts, Plaintiff has established that he had, and continues to have, a mental health condition sufficiently serious to satisfy the first element of a deliberate indifference claim.

However, Plaintiff has failed to allege facts showing that Defendants' response to Plaintiff's serious mental health condition or need was deliberately indifferent. In fact, Plaintiff's complaint suggests the opposite is true, i.e., that Plaintiff received ongoing access to mental health care by Defendants. It appears that Plaintiff may be asserting that Defendants are deliberately indifferent to his serious mental health needs because the KVSP crisis bed IDTT members denied his request to be transferred to an acute care treatment program at California Medical Facility and only made a suggestion, not a referral, that Plaintiff be sent to an Intermediate Care Facility. However, a difference of opinion between the mental health professionals assigned to Plaintiff's care and Plaintiff concerning what mental health care is

appropriate does not amount to deliberate indifference. Snow, 681 F.3d at 987. Therefore, Plaintiff has failed to plead a deliberate indifference claim against Defendants.

  **e.**  **Equal Protection**

The Equal Protection Clause requires that persons who are similarly situated be treated alike. Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985). An equal protection claim may be established by showing prison officials intentionally discriminated against a plaintiff based on his membership in a protected class, see, e.g., Thornton v. City of St. Helens, 425 F.3d 1158, 1167; Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Or. Dep't of Agric., 553 U.S. 591, 601-02 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008).

While Plaintiff asserts that the actions of the CCI and KVSP IDTT, mental, medical, and administrative officials are violating his equal protection rights, Plaintiff has failed to allege any facts showing that prison officials intentionally discriminated against him based on his membership in a protected class or that prison officials intentionally treated him differently than other similarly situated inmates without a rational basis. Therefore, Plaintiff has not pled a cognizable equal protection claim.

  **f.**  **Due Process**

"The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). To plead a procedural due process violation, a plaintiff must allege: (1) that the state interfered with a life, liberty, or property interest; and (2) the procedures used to deprive such interest were constitutionally insufficient. Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1990). Liberty interests may be found in either the Due Process Clause of the Fourteenth Amendment or in state law. Chappell v. Mandeville, 706 F.3d 1052, 1062 (9th Cir. 2013).

///

Plaintiff asserts that CCI officials, specifically CCI Medical Appeals Office officials, have arbitrarily rejected and/or cancelled his 602 HC health care appeals against the KVSP crisis bed IDTT committee members and the CCI officials and his staff complaint against appeals office personnel. Further, Plaintiff asserts that the CCI officials wrote their own 602 HC health care appeal, without Plaintiff's knowledge, in order to negate and hide the ongoing deliberate indifference and staff misconduct.

Plaintiff does not a have protected liberty interest in the processing his appeals, and therefore, he cannot pursue a claim for denial of due process with respect to the handling or resolution of his appeals. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988)). Further, while Plaintiff has claimed that the CCI officials wrote a falsified 602 HC health care appeal, Plaintiff has not alleged any facts showing exactly what the false 602 HC appeal said and how the false 602 HC appeal harmed him. Therefore, Plaintiff has not demonstrated that the false 602 HC appeal constituted an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 483-84 (1995). Thus, Plaintiff has not established that the falsified 602 HC health care appeal violated any liberty interest protected by the Due Process Clause of the Fourteenth Amendment. Consequently, Plaintiff has not pled a cognizable due process claim.

### g. Conspiracy

To establish a cognizable claim for conspiracy under 42 U.S.C. § 1983, a plaintiff must allege (1) the existence of an express or implied agreement among the defendants to deprive the plaintiff of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement. Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010). To establish a conspiracy, Plaintiff allege specific facts showing "an agreement or meeting of the minds to violate constitutional rights. To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (internal citations and quotation marks omitted). The mere conclusory statement that defendants "conspired" together is not

///

sufficient to state a cognizable claim. Woodrum v. Woodward Cnty., 866 F.2d 1121, 1126 (9th Cir. 1989).

Here, Plaintiff asserts that CCI and KVSP IDTT, medical, and administrative personnel and officials are currently acting, and, in the past, have acted, jointly together to obstruct, deny, delay, and deprive Plaintiff of his due process and equal protection rights and of his rights to receive meaningful and effective mental health care and treatment and ADA accommodations for his ongoing serious mental health needs. However, Plaintiff has failed to allege any specific facts showing the existence of an agreement, or a meeting of the minds, among specified Defendants to deprive Plaintiff of his constitutional rights. Therefore, Plaintiff has not alleged a cognizable claim for conspiracy.

### h. Americans With Disabilities Act

To state a claim under Title II of the ADA, a plaintiff must allege that:

> he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (alteration in original) (quoting Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002)); Weinreich v. Los Angeles Cnty. Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir. 1997) (citations omitted). "[I]nsofar as Title II [of the ADA] creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." United States v. Georgia, 546 U.S. 151, 159, 126 S. Ct. 877, 163 L. Ed. 2d 650 (2006) (emphasis in original). Compensatory damages are available under the ADA where the failure to accommodate is the result of deliberate indifference. Lovell v. Chandler, 303 F.3d 1039, 1056 (9th Cir. 2002) (citing Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001).

///

> "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." [Duvall, 260 F.3d] at 1139 (citing City of Canton v. Harris, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989)). The first element is satisfied when the public entity has notice that an accommodation is required. Id. The second element is satisfied if the entity's "failure to act [is] a result of conduct that is more than negligent, and involves an element of deliberateness." Id.

Id. (alteration in original). The Supreme Court has held that Title II of the ADA applies to state prisons. Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 209-10, 118 S. Ct. 1952, 141 L. Ed. 2d 215 (1998).

It is not clear whether Plaintiff is attempting to bring his ADA claims against Defendants in their individual or official capacities. To the extent he is attempting to bring these claims against Defendants in their individual capacities, he fails to state a claim for relief. Stewart v. Unknown Parties, 483 F. App'x 374, 374 (9th Cir. 2012) (citing Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002)); see also Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (stating that Title II of the ADA does not provide for individual capacity suits against state officials). If Plaintiff is attempting to bring individual capacity ADA claims under § 1983, he also fails to state a claim. Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA[.]").

Further, to the extent that Plaintiff is attempting to bring claims against Defendants in their official capacities, Plaintiff has failed to allege a cognizable claim for compensatory damages under the ADA. While Plaintiff pleads that Defendants have failed to provide him with ADA accommodations, Plaintiff has not alleged any facts showing that either CCI and/or KVSP had notice that Plaintiff required specific accommodations and that each prison deliberately failed to provide reasonable accommodations to Plaintiff. Therefore, Plaintiff has failed to adequately allege that, even though he is a qualified individual with a disability, he was either excluded from participation in, or denied the benefits of, the prison's services, programs, or activities, or was otherwise discriminated against by the prison "by reason of [his] disability." McGary, 386 F.3d at 1265.

### i. State Law and Regulations and Prison Policies

Plaintiff alleges that CCI and KVSP mental health personnel have obstructed, denied, delayed, and deprived Plaintiff of right to receive adequate and proper treatment for his serious mental health issues in violation of California law and regulations and California Department of Corrections and Rehabilitation policies and protocols.

However, § 1983 only provides a cause of action for the deprivation of federally protected rights. "To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, [s]ection 1983 offers no redress." Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) (quoting Lovell v. Poway Unified Sch. Dist., 90 F.3d 367, 370 (9th Cir. 1996)); see Davis v. Kissinger, No. CIV S–04–0878-GEB-DAD-P, 2009 WL 256574, *12 n. 4 (E.D. Cal. Feb. 3, 2009). Nor is there any liability under § 1983 for violating prison policy. Cousins v. Lockyer, 568 F.3d 1063, 1070 (9th Cir. 2009) (quoting Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997)). Thus, the violation of any state law or regulation that reaches beyond the rights protected by the federal Constitution and/or the violation of any prison regulation, rule or policy does not amount to a cognizable claim under federal law, nor does it amount to any independent cause of action under § 1983.

### B. Failure to Prosecute and Failure to Obey a Court Order

1. <u>Legal Standard</u>

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . . within the inherent power of the Court." District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal." Thompson v. Housing Auth., 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. See, e.g., Ghazali v. Moran, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring

amendment of complaint); Malone v. U.S. Postal Serv., 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986); Carey v. King, 856 F.2d 1439, 1440 (9th Cir. 1988).

2. Analysis

Here, the instant action has been pending since December 2018, and Plaintiff's first amended complaint is overdue. The Court cannot hold this case in abeyance awaiting compliance by Plaintiff. Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to the defendants, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. Anderson v. Air West, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. Pagtalunan v. Galaza, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction," which is the case here. In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the Court's warning to a party that failure to obey the Court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. Ferdik, 963 F.2d at 1262; Malone, 833 at 132–33; Henderson, 779 F.2d at 1424. The Court's June 26, 2019 and October 4, 2019 orders both expressly warned Plaintiff that his failure to comply with the Court's orders would result in a recommendation to dismiss this action, with prejudice, for failure to state a claim, failure to obey a court order, and failure to prosecute. (ECF Nos. 10, 13.) Thus, Plaintiff had adequate warning that dismissal could result from his noncompliance.

Additionally, at this stage in the proceedings, there is little available to the Court which

would constitute a satisfactory lesser sanction while also protecting the Court from further unnecessary expenditure of its scarce resources. Plaintiff is proceeding *in forma pauperis* in this action, making monetary sanctions of little use, and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating his case.

## III.

## RECOMMENDATION

Accordingly, for the reasons explained above, it is HEREBY RECOMMENDED that the instant action be dismissed, with prejudice, based on Plaintiff's failure to state any cognizable claim upon which relief may be granted, failure to obey the Court's June 26, 2019 and October 4, 2019 orders, and failure to prosecute this action.

These findings and recommendation will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendation, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (quoting Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 12, 2019**

UNITED STATES MAGISTRATE JUDGE